IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


DAWN M. BLEVINS,

        Plaintiff,

vs.                              Case No. 12-1411-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

        Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

## I. General legal standards

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

This case has a very long history. Plaintiff filed for disability benefits on January 9, 2003 (R. at 1201). On April 19, 2006, administrative law judge (ALJ) Jesse H. Butler issued the 1st decision denying plaintiff benefits (R. at 48-54).

Plaintiff sought judicial review of the decision. On March 4, 2008, based on defendant's motion to remand, the decision of the Commissioner was reversed and the case was remanded back for further hearing after it was discovered that the tape recording of the administrative hearing was blank, preventing the preparation of a proper court record (R. at 56-60).

On May 13, 2009, a second decision was issued by ALJ Guy E. Taylor, again denying plaintiff disability benefits (R. at 31-42). Plaintiff again sought judicial review of the decision. On March 8, 2011, Judge Lungstrum issued an order reversing the decision of the Commissioner and remanding the case for further hearing (R. at 1200-1220).

On September 20, 2011, administrative law judge (ALJ) Guy E. Taylor issued the 3rd ALJ decision (R. at 1157-1175). Plaintiff alleges that she had been disabled since May 4, 2001 (R. at 1157). Plaintiff is insured for disability insurance benefits through June 30, 2003 (R. at 1159). At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date (R. at 1159). At step two, the ALJ found that plaintiff has the following severe impairments: fibromyalgia, bilateral carpal tunnel syndrome, Raynaud's syndrome, status post lumbar spine fusion, chronic obstructive pulmonary disease, edema, major depressive disorder, and an anxiety disorder (R. at 1159). At step three, the ALJ

determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 1160). After determining plaintiff's RFC (R. at 1162), the ALJ determined at step four that plaintiff is unable to perform past relevant work (R. at 1173). At step five, the ALJ determined that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 1173-1174). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 1174-1175). Plaintiff has again sought judicial review of the decision.

**III. Did the ALJ err in the weight given to the opinions of Dr. Tramp, a treating physician, and Dr. McGehee, a consultative examiner?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's

6

reports, not the other way around.  Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations.  If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.  <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources.  <u>Robinson</u>, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. <u>Castellano v. Secretary of Health & Human Services</u>, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion.  <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating source opinion not entitled to controlling weight is still

7

entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

<u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion. If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. <u>Watkins</u>, 350 F.3d at 1301.

Dr. Tramp is a treating physician who saw the plaintiff on 5 occasions in 2010-2011. On August 4, 2011, he prepared a medical source statement-physical. Dr. Tramp set out numerous limitations, including his opinion that plaintiff can only sit for less than 2 hours in an 8 hour workday, and can only stand/walk for less than 2 hours in an 8 hour workday. He further opined that plaintiff would need to lay down or recline or elevate her feet several times during a workday, and would need to take unscheduled restroom breaks during the workday. He

8

also stated that she would miss more than 4 days of work per month as a result of her symptoms or for required treatment (R. at 1683-1688). These limitations would clearly preclude plaintiff from working.

The ALJ gave little weight to his opinions because the ALJ found that they were not well supported by medically acceptable clinical and laboratory diagnostic techniques and because the opinion is inconsistent with other substantial evidence in the record. The ALJ further stated that this opinion is inconsistent with the objective medical findings that indicated that plaintiff had only sparse episodes of edema and normal neurological and musculoskeletal exams of the upper and lower extremities. The ALJ also found that plaintiff's description of activities of daily living are inconsistent with this opinion (R. at 1172).

The ALJ took into consideration the consultative physical exam performed by Dr. Verstraete on March 16, 2002 (R. at 290-293). Dr. Verstraete noted that there was no objective evidence of any functional impairment noted clinically (R. at 293, 1163). The ALJ also referenced a consultative examination by Dr. Hendler on June 17, 2003 (R. at 312-315) indicating that plaintiff had pain, myofascia with signs of fibromyalgia syndrome, but commented that there are no objective findings which preclude the patient from performing up to six hours per

9

day of standing and/or walking (R. at 314, 1164). The ALJ set out in great detail these and many other physical examination results (1163-1168) which provide specific support for the medical findings identified by the ALJ for discounting the opinions of Dr. Tramp.

The record also contains two physical RFC assessments from non-examining physicians, Dr. Goering on September 19, 2003 (R. at 316-323), and Dr. Shah on March 5, 2008 (R. at 660-669). Both Dr. Goering and Dr. Shah made findings that plaintiff was not as limited as opined by Dr. Tramp. The ALJ found that their opinions, and the opinions of Dr. Hendler are consistent with the evidence in the file, and gave some weight to their opinions (R. at 1171).

The record also contains two other medical source statements-physical, one by advanced registered nurse practitioners (ARNP) Lay and Long dated April 27, 2007 (R. at 213-218), and one by ARNP Long on January 18, 2008 (R. at 661-662). Both statements indicate that plaintiff has limitations that would preclude work, including an inability to sit, stand and/or walk for an 8 hour workday. The ALJ gave little weight to their opinions for various reasons, including the fact that they are not acceptable medical sources (R. at 1171-1172). Plaintiff does not argue that the ALJ erred in the weight the ALJ accorded to these opinions.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion).

The ALJ gave little weight to the opinions of Dr. Tramp because he found that his opinions were not supported by the medical record and are inconsistent with other substantial evidence in the record. The ALJ gave greater weight to other consulting and non-examining medical sources, and set out in detail a number of medical findings which were inconsistent with the opinions of Dr. Tramp, including physical exams showing normal musculoskeletal and neurological findings (R. at 1163-1168). Dr. Verstraete found no objective evidence of any functional impairment (R. at 293). Dr. Hendler found no objective findings which preclude plaintiff from standing and/or walking up to 6 hours a day (R. at 314). The assessment approved by Dr. Shah stated that the RFC findings took into

account plaintiff's activities of daily living, which were found to be not significantly limited (R. at 669).

The court will not reweigh the evidence. The court will review only the sufficiency of the evidence, not its weight, Oldham v. Astrue, 509 F.3d 1254, 1257 (10th Cir. 2007), and the court finds that there was certainly enough evidence to support the ALJ's finding to give little weight to the opinions of Dr. Tramp. Although the evidence may have supported contrary findings, the court may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo. Oldham, 509 F.3d at 1257-1258.

Dr. McGehee is a clinical psychologist who performed a psychological evaluation on the plaintiff on June 9, 2009, and prepared a medical source statement-mental (R. at 978-985). Dr. McGehee opined that plaintiff was not limited in 11 categories, was moderately limited in 5 categories, and was markedly limited in 4 categories (R. at 979-980).[2] Dr. McGehee further opined that plaintiff would miss more than 4 days of work per month as a result of symptoms or treatment (R. at 981).

---

[2] Dr. McGehee found that plaintiff was markedly limited in: 1) the ability to maintain attention and concentration for extended periods, 2) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, 3) the ability to work in coordination with or proximity to others without being distracted by them, and 4) the ability to complete a normal workday and work week without interruption from psychologically based symptoms; and to perform at a consistent pace without an unreasonable number and length of rest periods (R. at 979).

The ALJ gave little weight to Dr. McGehee's opinions because the opinions were based on a single evaluation of the plaintiff and there was no treatment relationship.  The ALJ further found that the opinions were not well supported by the medical record and inconsistent with other substantial evidence in the record.  The ALJ further noted that her findings were inconsistent with Dr. McGehee's own finding that plaintiff's understanding and memory were within normal limits (R. at 1172, 985).

The ALJ took into consideration two mental status examinations by Dr. Mintz (R. at 1163, 1164).  The first one, on March 11, 2002, concluded by saying that plaintiff appears able to understand simple and intermediate instructions, and has related reasonably well to persons in the past (R. at 287-289). The second one, dated August 19, 2003, states that plaintiff appears able to understand simple and intermediate instructions, and concentration capacity appears variable (R. at 308-310). The ALJ also discussed numerous other mental status exams, with most of them showing normal status except for plaintiff appearing stressed or tired (R. at 1164-1166).

The record also contains two mental RFC assessments by non-examining medical sources.  The first, by Dr. Diller, and dated September 29, 2003, found that plaintiff was only moderately limited in 5 of 20 categories (R. at 324-326).  The second, by

Dr. Jessop, and dated January 22, 2008, found that plaintiff was only moderately limited in 3 of 20 categories (R. at 672-674). Thus, both these assessments found that plaintiff's mental impairments were far less severe than opined by Dr. McGehee.

The ALJ correctly stated that Dr. McGehee was only a consulting medical source who did not treat the plaintiff. Her opinions are not supported by the medical record, including the opinions of Dr. Mintz (in two separate reports), Dr. Diller, and Dr. Jessop. The ALJ also cited to numerous mental status exams in the treatment records, most of which showed a normal status.

The court will not reweigh the evidence. The court finds that there was certainly enough evidence to support the ALJ's finding to give little weight to the opinions of Dr. McGehee.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 26th day of March 2014, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge